**GIBSON, DUNN & CRUTCHER LLP**
THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
JILLIAN N. LONDON, SBN 319924
  jlondon@gibsondunn.com
PATRICK J. FUSTER, SBN 326879
  pfuster@gibsondunn.com
BRANTON J. NESTOR, SBN 338445
  bnestor@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

JEFFREY B. WALL (*pro hac vice* forthcoming)
  jwall@gibsondunn.com
MORGAN L. RATNER (*pro hac vice* forthcoming)
  mratner@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8533

*Attorneys for Plaintiff Pacific Bell Telephone Company d/b/a AT&T California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN REYNOLDS, in his official capacity as President of the California Public Utilities Commission; DARCIE L. HOUK, KAREN DOUGLAS, MATTHEW BAKER, and CHRISTINE HARADA, in their official capacities as Commissioners of the California Public Utilities Commission; ROB BONTA, in his official capacity as Attorney General of the State of California, <br><br> Defendants. | Case No. 3:26-cv-03148 <br><br> **DECLARATION OF DR. HANY FAHMY** <br><br> Judge:  Honorable Linda Lopez <br><br> Courtroom:  14B <br><br> Hearing Date:  July 1, 2026 |

DECLARATION OF DR. HANY FAHMY

**DECLARATION OF DR. HANY FAHMY**

I, Hany Fahmy, hereby declare as follows:

**I.    QUALIFICATIONS AND BACKGROUND**

1.    I am an Assistant Vice President of AT&T Services, Inc. in the areas of Technology Policy and Regulatory.  I have worked for AT&T since 1998, including 17 years in AT&T Bell Labs.  I have extensive technical experience in wireless and wireline telecommunications and data networks, including all aspects of service, technology, and regulatory development.  Prior to joining AT&T, I was a Research Staff Member with Racal DataComm USA, a manufacturer of modems, data communications, and networking equipment.  I hold a Ph.D. in Electric and Computer Engineering from the University of Miami and an M.B.A. in Data Analytics from Georgia State University.

2.    I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently to them.

**II.    POTS NETWORK AND TRANSITION TO MODERN SERVICES**

3.    The purpose of this declaration is to describe the architecture of the converged network platform that AT&T California uses to provide plain old telephone service ("POTS") and show that the facilities and elements in that network that AT&T California uses to provide FCC-regulated voice service are the same facilities and elements that AT&T California uses to provide state-regulated voice service.[1]  The declaration demonstrates that AT&T California cannot decommission the FCC-regulated facilities on its POTS network without also ending its provision of state-regulated service.  As such, unless AT&T California can discontinue fully its POTS network, AT&T California will not free up resources that can be used to support innovation and investment in modern, IP-based broadband networks that support the services that consumers now demand.

---

[1] Pacific Bell Telephone Company d/b/a AT&T California owns and operates AT&T's POTS network in California.

- 1 -                    DECLARATION OF DR. HANY FAHMY

## III.   POTS NETWORK ARCHITECTURE

4.   The network that AT&T California uses to provide POTS today is similar to the one its predecessors used in the days of Alexander Graham Bell. A pair of copper wires runs from the customer's premises to a switch—this connection is sometimes called the "local loop," as the pair of copper wires form a loop (also known as a "circuit") between the customer's premises and the switch. The customer speaks into the telephone, which converts the customer's voice into an analog electrical current, which mirrors the frequency and amplitude of the customer's voice. One of the copper wires transmits that analog electric current from the customer's premises to the switch, and the other copper wire transmits the analog electric current from the switch to the customer's premises. When the customer wants to make a telephone call, the switch creates a connection between the customer's pair of copper wires and the pair of copper wires of the person that the customer is calling. The result is a continuous circuit between the two parties to the telephone call.

5.   To be sure, there have been some notable updates to the POTS network over the last century and a half. For example, switching was originally done manually, with a switchboard operator connecting calls with a pair of phone plugs. Today, by contrast, switching is done automatically. Most significantly, however, is the ability to make calls between customers on different switches, and the use of a network architecture with multiple switches to accommodate this.

6.   In today's POTS network, the first switch after a customer's premises is a "Class-5 switch" or a "local circuit switch." If the customer and the person the customer is calling are on the same Class-5 switch, then the Class-5 switch connects the two. If not, the Class-5 switch sends the call over lines called "trunks" to a "Class-4 switch" or the "Tandem switch." If the call is going to a nearby Class-5 switch (more specifically, if the call stays within a "Local Access Transport Area" or "LATA"), the Class-4 switch will route the call there. If the call is going farther afield

- 2 -   DECLARATION OF DR. HANY FAHMY

(more specifically, outside the LATA), the Class-4 switch will hand the call over to a long-distance telephone company's switch at the long-distance telephone company's "point-of-presence" or "POP," which is typically located adjacent to or near the Class-4 switch. The long-distance telephone company carries the call from its POP at the Class-4 switch of the person calling to its POP at the Class-4 switch of the person being called. The local telephone company of the person being called then carries the call from the Class-4 switch to the Class-5 switch and from the Class-5 switch on to the person's premises over the local loop.

## IV. LEGACY SERVICES PROVIDED OVER THE POTS NETWORK

7.      AT&T California provides both "exchange access" and "telephone exchange service." The same POTS facilities (*i.e.*, the local loop, the Class-4 and Class-5 switches, the trunks that connect the switches, and the supporting systems) are jointly used to provide both services.

8.      Exchange access provides customers with the ability to make and receive long-distance (interLATA) calls, which are frequently interstate. Exchange access is the connection between the customer's premises and the long-distance telephone company's POP over the local loop via the Class-5 switch and the Class-4 switch. Without this connection, the customer would have no ability to place or receive long-distance telephone calls, as long-distance telephone companies do not have networks that run all the way to customers' premises. When the customer places a long-distance call, AT&T California carries the call from the customer's premises to the Class-5 switch over the local loop, then on to the Class-4 switch, where AT&T California hands over the call to the long-distance carrier's switch at the long-distance carrier's POP. The same is true in reverse when a customer of AT&T California receives a long-distance call—AT&T California picks up the call at the long-distance carrier's switch at the long-distance carrier's POP, where it goes to the Class-4 switch, then the Class-5 switch, and on to the customer's premises via the local loop. When

a long-distance call crosses state lines, the exchange access that provides the connection between the long-distance carrier's POP and the customer's premises is treated as an interstate service subject to FCC regulation.[2]

9. Telephone exchange service is a local voice service within an exchange or connected system of exchanges (intraLATA) and typically wholly intrastate. The customer places a call, which travels over the local loop to the Class-5 switch. If the called party is on the same Class-5 switch, the call is routed directly by the same Class-5 to the called party. If not, the call goes to the Class-4 switch, which then sends the call to the Class-5 switch of the called party, and then on from there over the local loop to the called party. Historically, telephone exchange service has been considered an intrastate service subject to state regulation.[3]

10. While AT&T California's POTS network provides two services that may have been distinct for cost recovery and ratemaking purposes (exchange access and telephone exchange service), the facilities and elements are the same (the local loop, the switches, the connecting trunks, and the supporting systems). There are not separate local loops, separate switches, separate connecting trunks, or separate supporting systems for exchange access and telephone exchange service. The same POTS facilities are used for both exchange access and telephone exchange service, regardless of whether someone is calling the person next door or a person across the country or even across the world.

---

[2] The foregoing describes the historical paradigm. AT&T's voice competitors today offer "all-distance" services using IP-based networks that merge the functions of historically distinct interstate and intrastate services/networks.

[3] I understand that the California Public Utilities Commission requires AT&T California to offer "Residential Basic Telephone Service," which is also called "basic service." I also understand that telephone exchange service is one of the elements of basic service.

GIBSON, DUNN & CRUTCHER LLP

- 4 -     DECLARATION OF DR. HANY FAHMY

## V.    INSEPARABILITY OF JURISDICTIONALLY-MIXED POTS SERVICES FOR NETWORK RETIREMENT

11.    The POTS network provides a "jurisdictionally mixed service." In other words, some of the services that the POTS network provides (*e.g.*, interstate exchange access) are subject to federal regulation, and some of the services that the POTS network provides (*e.g.*, local, and typically intrastate, telephone exchange services) are subject to state regulation. I understand that there are complicated rules about how much of the costs can be recovered from the different services. Similarly, I understand that the FCC has regulatory authority over interstate exchange access, while state commissions have regulatory authority over telephone exchange service to the extent the end points of a call are in the same state.

12.    While the federal government and the state governments historically shared jurisdiction over the POTS network for purposes of rate regulation, this is not possible for purposes of network retirement. That shared jurisdiction for rate regulation could be achieved with accounting and other economic conventions, but those types of conceptual approaches do not apply to actual operation of loops, switches, connecting trunks, and supporting systems that are jointly used for all types of calls.

13.    Even if AT&T California were to restrict customers from making interstate calls over POTS, AT&T California would still need to maintain the same local loops, switches, trunks, powering systems, and support infrastructure in order to provide intrastate POTS service. Such restrictions therefore would not materially reduce the operational burden or allow meaningful retirement of the underlying legacy network.

14.    Either the POTS network remains up and running, or it does not. AT&T California cannot retire a portion of the local loop, or a portion of a switch, or a portion of a connecting trunk, or a portion of the supporting systems. Either AT&T California

DECLARATION OF DR. HANY FAHMY

continues to spend around $1 billion a year keeping its POTS network in California running or AT&T California does not.  There is no option for a partial retirement of just the interstate long-distance part of the POTS network.  And if AT&T California cannot retire its loops, switches, connecting trunks, and supporting systems, AT&T California will not be able to achieve savings that can be used for the modern, IP-based broadband networks and services that consumers prefer.

DECLARATION OF DR. HANY FAHMY

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 20, 2026.

_____
Dr. Hany Fahmy
Assistant Vice President,
Technology Policy and Regulatory,
AT&T Services, Inc.

GIBSON, DUNN &
CRUTCHER LLP

- 7 -                    DECLARATION OF DR. HANY FAHMY