**GIBSON, DUNN & CRUTCHER LLP**
THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
JILLIAN N. LONDON, SBN 319924
  jlondon@gibsondunn.com
PATRICK J. FUSTER, SBN 326879
  pfuster@gibsondunn.com
BRANTON J. NESTOR, SBN 338445
  bnestor@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

JEFFREY B. WALL (*pro hac vice* forthcoming)
  jwall@gibsondunn.com
MORGAN L. RATNER (*pro hac vice* forthcoming)
  mratner@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8533

*Attorneys for Plaintiff Pacific Bell Telephone
Company d/b/a AT&T California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA,<br><br>                    Plaintiff,<br><br>         v.<br><br>JOHN REYNOLDS, in his official capacity as President of the California Public Utilities Commission; DARCIE L. HOUK, KAREN DOUGLAS, MATTHEW BAKER, and CHRISTINE HARADA, in their official capacities as Commissioners of the California Public Utilities Commission; ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>                    Defendants. | Case No. 3:26-cv-03148-LL-JAC<br><br>**DECLARATION OF HANK RAY**<br><br>Judge:  Honorable Linda Lopez<br><br>Courtroom:  14B<br><br>Hearing Date:  July 1, 2026 |

DECLARATION OF HANK RAY

# DECLARATION OF HANK RAY

I, Hank Ray, hereby declare as follows:

## I.    QUALIFICATIONS AND BACKGROUND

1.    I am Assistant Vice President of Network Wireline Transformation at AT&T Services, Inc.  I have been employed by AT&T for 29 years.  In my role, I oversee initiatives focused on the modernization and transition of the company's legacy wireline network.  My responsibilities include identifying and advancing opportunities to improve cost efficiency by reducing legacy network burden and reinvesting in modern network capabilities, while evaluating workforce deployment and operational practices.  I am familiar with AT&T's legacy copper network and the Plain Old Telephone Service ("POTS") provided over that network, the costs associated with maintaining that network, and AT&T's efforts to transition to modern communications technologies.

2.    I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently to them.

## II.    POTS AND THE TRANSITION TO MODERN SERVICES

3.    POTS is provided over AT&T's legacy copper network using time-division multiplexing (TDM) technology.  That network is decades old and was designed for a different era of telecommunications.  In California, it consists of hundreds of thousands of miles of copper cables and hundreds of "circuit" switches.

4.    Customer demand for POTS has declined sharply.  In AT&T's service territory in California, only approximately 3% of households remain on POTS.

5.    Over a 12-month period from March 2025 to February 2026, AT&T added approximately 450 new residential POTS lines in California, while subscribers cancelled tens of thousands of POTS lines.  In contrast, AT&T in California gained more than a million subscribers to wireless and IP-based voice services over the same period.

GIBSON, DUNN &
CRUTCHER LLP

- 1 -                    DECLARATION OF HANK RAY

6. One reason for this consumer shift is that modern alternatives, including wireless and Voice over Internet Protocol (VoIP) services, generally provide improved call quality, greater reliability, and a broader range of features than POTS.

7. AT&T is in the process of transitioning away from its legacy copper network to modern, IP-based infrastructure. AT&T owns the nation's largest fiber network and has built the largest mobile broadband network in the United States, with its 5G network covering over 320 million people across 27,700 cities and towns. That investment is a competitive imperative.

8. A necessary step in transitioning from legacy networks to modern systems is "grandfathering," which means ceasing to offer POTS to new customers while continuing to serve existing customers. In my experience, grandfathering is needed to manage the transition away from legacy services by conditioning existing customers, limiting new subscriptions, and enabling planning for eventual discontinuance and network retirement.

9. Grandfathering is critically important—and a standard operation in the telecommunications industry—for several reasons.

10. First, grandfathering facilitates the technological transition from old systems to modern networks. It permits AT&T to limit servicing and energizing of legacy networks that are no longer in use—permitting AT&T to save substantial resources, reduce aggregate costs, enhance environmental sustainability, and accelerate transitions to modern networks. And it permits AT&T to plan for the future—freeing up present and future capital which will no longer be tied up with legacy services, and allowing AT&T to reallocate resources into modern systems.

11. Second, grandfathering enhances AT&T's ability to ensure compliance with regulatory requirements and to provide customers with greater opportunities to transition to substitute services. I understand that Federal Communications Commission regulations require that adequate replacement services are available before older POTS systems are discontinued. A grandfathering period—combined

with providing notice to customers of replacement services—provides an important means for AT&T to ensure that existing POTS customers are smoothly transitioned into adequate replacement services that satisfy existing telecommunication regulatory requirements.

12.   Third, grandfathering as an initial step is the most customer-friendly method to manage through a technology transition.  Grandfathering maintains AT&T's consumer relations and conditions customers for service changes.  Grandfathering permits AT&T to decline new POTS customers and to smoothly transition existing POTS customers, mitigating consumer confusion or consumer frustration when services are wound down.  Grandfathering is an important transition strategy to decrease the number of consumers that stop using AT&T's services and switch to alternative providers as a result of such confusion or frustration.

13.   Based on my understanding of AT&T's network and available providers, all of its POTS customers in the areas where AT&T is seeking to grandfather POTS have alternative voice service options.  In particular, 100% of these customers have  network coverage sufficient to allow AT&T to offer AT&T Phone Advanced, or AP-A, to them.  Approximately 99.9% of broadband serviceable locations have two or more facilities-based fixed broadband or mobile voice providers.  And about 99.7% have three or more providers.

14.   The AT&T Phone Advanced service lets customers keep their phone numbers and preserves the same look and feel of POTS by letting customers use their traditional landline phones, while delivering improved reliability and efficiency by connecting those phones to AT&T's wireless network (or any broadband connection).  AP-A works with fax machines, elevators, medical monitors, and accessibility devices for people with hearing and speech difficulties.  It also has a 24-hour backup battery for emergencies and can take advantage of wireless and wired internet in the event of service disruptions.  AP-A is usually cheaper than POTS, and it has already been

GIBSON, DUNN &
CRUTCHER LLP

- 3 -                    DECLARATION OF HANK RAY

found to be an adequate replacement for POTS by the Federal Communications Commission.

## III.    FINANCIAL IMPACT

15.    Preventing grandfathering will cause serious financial harm to AT&T.

16.    Maintaining AT&T's legacy copper network is extremely costly.  In California alone, AT&T spends approximately $1 billion annually to operate and maintain this legacy business.  These costs include labor, maintenance, energy, real estate, and capital expenditures.

17.    A substantial source of costs is the cost of energy to power the copper network that supports POTS.  That network wastes energy because all lines stay powered on 24/7 even when they are not in use.  The legacy copper network used to provide POTS in California consumes hundreds of millions of kilowatt-hours each year.  The cost of energy to power that network is about $200 million annually.

18.    Another substantial source of costs is the cost of servicing and maintaining POTS—which is difficult and expensive.  Replacement parts for legacy switches and copper infrastructure are difficult to obtain and must sometimes be sourced from secondary markets, with AT&T even going so far as to search on eBay. In addition, copper facilities are subject to frequent theft for scrap metal, requiring costly repair and replacement.  AT&T has experienced a significant number of thefts in California, virtually all of which are copper-related, which caused approximately 4,000 outages in 2025 (with around $50 million in costs) and about 2,000 outages in 2026 through April (with around $40 million in costs, and climbing).  These thefts and outages threaten customer retention, increase service costs, and damage AT&T's market brand.  They also harm California consumers and businesses.

19.    POTS requires more intensive and expensive maintenance than modern systems.  These expenditures are necessary to keep the network operational, but they do not materially improve service quality or expand capabilities.  They are incurred solely to maintain an aging system that is being used by fewer and fewer consumers.

GIBSON, DUNN & CRUTCHER LLP

- 4 -                    DECLARATION OF HANK RAY

Many of these costs are not recoverable even if AT&T is ultimately permitted to discontinue POTS months or years later.

20.    In my experience, because grandfathering is a necessary step toward discontinuing POTS and retiring the underlying network, the inability to grandfather requires AT&T to continue investing substantial resources in infrastructure that it otherwise would begin retiring—and causes significant financial and business harms to AT&T.  Based on my experience and AT&T's data from winding down POTS in other jurisdictions, such as Texas, delays or prohibitions of grandfathering increase the total cumulative costs to AT&T.

21.    Grandfathering would permit AT&T to begin immediately reducing substantial ongoing operational and maintenance obligations associated with legacy POTS infrastructure in areas where there is little or no remaining customer demand for those services.  Although only approximately 3% of households in AT&T's California territory continue to use legacy POTS service, AT&T currently must continue maintaining the broader copper network infrastructure needed to support the possibility of future POTS orders.  As a result, AT&T must continue operating, monitoring, repairing, and maintaining infrastructure that serves minimal or no existing customer demand.

22.    Most significantly, in California, AT&T currently maintains an estimated 15,000 remote terminals—which are cabinets, huts, or pedestals that house powered pieces of equipment outside of a "central office" service center that extend the service network—in areas with little or declining POTS usage, solely because AT&T remains obligated to accept potential new POTS orders in those areas.  The equipment housed in these terminals is highly sensitive to heat, moisture, and other environmental conditions, and thus requires fans and other equipment (including batteries and other back-up power systems) to maintain a controlled environment.  Nearly one thousand of these remote terminals are currently referred to as "keeper systems," because, even though they have no active customers, they must be kept on

and powered up just in case a customer places a POTS order in that service area. Maintaining those facilities requires ongoing expenditures associated with electricity usage, equipment monitoring, inspections, maintenance, repairs, replacement parts, and related operational support despite nonexistent customer demand.  In addition, AT&T must continue maintaining portions of its legacy copper infrastructure in a service-ready condition, including keeping certain copper cables energized and pressurized to prevent water intrusion and service degradation.

23.    If AT&T were permitted to grandfather POTS service and cease accepting POTS orders in areas where there are no existing customers, AT&T could begin consolidating, deactivating, or reducing support for portions of that legacy infrastructure that currently must remain operational solely to preserve the ability to provide future POTS service.  AT&T estimates that grandfathering in its California service territory would immediately save it tens of millions of dollars per year—and save it billions over the long term by helping it to wind down old networks (which cost roughly a billion dollars per year to operate and maintain) and permitting it to save and reclaim network resources (including nearly a billion dollars' worth of copper underground).  Grandfathering in AT&T's California service territory would thus save it significant sums.

24.    For a start, AT&T could reduce necessary and proactive power and maintenance obligations associated with unused facilities and reduce the inventory, equipment, and operational resources maintained in reserve for potential future POTS orders.  Of the 1,000 keeper systems in California, AT&T currently maintains nearly 600 of them in areas where AT&T expects it could immediately reduce these obligations if grandfathering were permitted.  Specifically, as a result of grandfathering, AT&T estimates it could immediately save more than $1.7 million annually by eliminating power, maintenance, and other operational costs associated with these 600 remote terminals and unused network facilities, including expenses related to energizing facilities, air-pressurizing lines, and proactive maintenance.

GIBSON, DUNN &
CRUTCHER LLP

- 6 -    DECLARATION OF HANK RAY

25.     If permitted to grandfather, AT&T could also immediately reduce costs associated with maintaining outdated systems that support POTS services.   In particular, it could reduce expenses related to copper-thefts by reducing personnel and other operational resources necessary to prevent and repair damage in areas with no customers.  AT&T estimates that these reductions would result in immediate annual savings of more than $20 million.  In addition, AT&T could immediately begin reclaiming some of the approximately $800 million in value from copper in legacy systems—a process that would accelerate as customers are transitioned off old copper lines.

26.     Further, grandfathering would permit AT&T to immediately begin to reclaim certain parts used in "keeper system" remote terminals—such as high-value line cards (electronic circuit boards) that contain gold and silver, fans that contain magnets made of rare earth elements in short supply, and batteries.  These parts could be reclaimed and reused elsewhere, or sold, freeing up those funds to be reinvested elsewhere.  AT&T estimates that reclaiming parts in the 600 keeper systems that it could immediately grandfather if authorized to do so would generate an estimated $300,000 in value.

27.     AT&T's experience in other jurisdictions demonstrates that grandfathering enables these types of operational efficiencies and cost reductions.  For example, in Oklahoma, AT&T decommissioned its first wire center in late 2025.  In Texas, where AT&T does not have similar COLR obligations, it was able to wind down service in areas where there were no existing POTS customers and no new POTS orders.  Nationwide, AT&T has been able to recycle and resell more than 100 million pounds of copper since beginning its copper reclamation efforts in 2024.  AT&T was also able to save significant resources and capital associated with maintenance, operational, utility, resource, and other costs.  As set out above, in California, AT&T has modeled that it could achieve similar, immediate cost savings.

GIBSON, DUNN & CRUTCHER LLP

- 7 -                          DECLARATION OF HANK RAY

28.    Prohibiting AT&T from grandfathering—under threat of California regulatory enforcement—would cause AT&T significant financial harm.  It would require AT&T to continue maintaining outmoded facilities and infrastructure throughout the pendency of this litigation solely because AT&T remains obligated under California regulations to accept potential new POTS orders—or else run the risk of penalties under California law.  In my experience, those continuing operational, maintenance, and energy-related expenditures are substantial and ongoing. Delaying AT&T's ability to reduce or deactivate unnecessary legacy infrastructure also delays AT&T's ability to redirect operational and capital resources toward maintaining and improving modern network infrastructure and services.    Those continuing expenditures and operational burdens cannot be fully recovered after the fact.

## IV.    CUSTOMER AND GOODWILL IMPACT

29.    Preventing grandfathering will harm AT&T's relationship with existing and prospective customers.

30.    POTS service is less reliable and offers fewer capabilities than modern IP-based alternatives.

31.    The legacy copper network is more vulnerable to outages, including those caused by weather, aging infrastructure, and theft.

32.    In my experience, customers experiencing these issues often attribute them to AT&T, even though AT&T is required to continue offering POTS.  When customers experience outages or problems on inferior copper networks, they often blame AT&T—rather than the outmoded POTS technology—which damages AT&T's reputation with its existing and prospective customer base.  Requiring AT&T to offer POTS to new customers negatively impacts AT&T's reputation and customer relationships even as to its modern, wireless and IP-based services.  Grandfathering would help ensure that new customers use AT&T's modern services—not outmoded systems that belong to the last century.

GIBSON, DUNN & CRUTCHER LLP

- 8 -                    DECLARATION OF HANK RAY

33.    Also in my experience, if AT&T is unable to grandfather POTS in advance of discontinuance, the result may further erode customer goodwill by creating confusion and frustration.  Without grandfathering, new customers would sign up for POTS service—only to shortly receive a notice of a coming discontinuance of that service.  That whiplash will generate confusion and frustration in new customers and will cause irreparable harm to AT&T's customer-service brand.

34.    Preventing AT&T from grandfathering removes an important tool for gradually transitioning customers, preventing consumer confusion over whether POTS service will continue, and avoiding frustrating customers with potentially surprising discontinuance notices or refusals of service expansions.  Grandfathering helps address these issues by gradually phasing out an outdated service and allowing customers to plan for a transition to modern alternatives.  Without grandfathering, AT&T would run a serious risk of confusing and frustrating—and losing—customers.

## V.    COMPETITIVE IMPACT

35.    Preventing grandfathering also provides AT&T's competitors an advantage in the marketplace.

36.    In its service territory in California, AT&T competes with providers that offer services over modern networks, including wireless and IP-based platforms.

37.    These competitors do not have legacy copper networks or COLR obligations to serve all customers and are therefore able to devote their resources solely to modern technologies.

38.    By contrast, AT&T must allocate significant financial and operational resources to maintaining POTS under its unique COLR obligations.

39.    This reduces AT&T's ability to invest in modernization, including fiber deployment, wireless expansion, and other advanced services.

40.    In my experience, telecommunications infrastructure investments are capital-intensive and time-sensitive, and delays in such investment can have long-term competitive consequences.  Because AT&T must continue devoting substantial

- 9 -                    DECLARATION OF HANK RAY

resources to maintaining its legacy network, it has fewer resources available to expand modern services compared to providers that are not subject to similar requirements.

41.     Every day that AT&T is forced to sell and maintain POTS puts AT&T's competitors at an advantage.  Because POTS is an inferior service—with service interruptions and thefts—AT&T's competitive brand suffers by being forced to offer it on the marketplace.  And because POTS takes away resources from modern development, increased delays and expense in transitioning from it ultimately decrease AT&T's ability to offer superior networks compared to its competitors. Customers who select providers for newer or more reliable offerings are difficult to win back, and the resulting loss of market share may persist over time.

- 10 -                      DECLARATION OF HANK RAY

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 26 , 2026.

_____

Hank Ray

Assistant Vice President of Network Wireline Transformation at AT&T Services, Inc.