**GIBSON, DUNN & CRUTCHER LLP**
THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
JILLIAN N. LONDON, SBN 319924
  jlondon@gibsondunn.com
PATRICK J. FUSTER, SBN 326879
  pfuster@gibsondunn.com
BRANTON J. NESTOR, SBN 338445
  bnestor@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

JEFFREY B. WALL (*pro hac vice*)
  jwall@gibsondunn.com
MORGAN L. RATNER (*pro hac vice*)
  mratner@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8533

*Attorneys for Plaintiff Pacific Bell Telephone
Company d/b/a AT&T California*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN REYNOLDS, in his official capacity as President of the California Public Utilities Commission; DARCIE L. HOUK, KAREN DOUGLAS, MATTHEW BAKER, and CHRISTINE HARADA, in their official capacities as Commissioners of the California Public Utilities Commission; ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>Defendants. | Case No. 3:26-cv-03148-LL-JAC<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:  Honorable Linda Lopez<br><br>Courtroom:  14B<br><br>Hearing Date: July 1, 2026<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

3:26-CV-03148-LL-JAC
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT.........................................................................................................2

I.      AT&T Is Likely To Succeed On The Merits Of Its Preemption Claim...........2

        A.      Section 214(c) Expressly Preempts California's Requirements............2

        B.      California's COLR Requirements Are Impliedly Preempted................5

II.     AT&T Will Suffer Irreparable Harm ................................................................8

III.    The Equities And Public Interest Weigh Heavily In AT&T's Favor ..............9

CONCLUSION....................................................................................................10

GIBSON, DUNN &
CRUTCHER LLP

3:26-CV-03148
REPLY IN SUPPORT OF MOTION FOR               - i -
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alabama Ass'n of Realtors* v. *HHS*,
594 U.S. 758 (2021) ................................................................................................. 9

*Am. Trucking Ass'ns, Inc.* v. *City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ................................................................................ 10

*AT&T Corp.* v. *Iowa Util. Bd.*,
525 U.S. 366 (1999) ................................................................................................. 7

*BellSouth Telecom., Inc.* v. *Kentucky Pub. Serv. Comm'n*,
669 F.3d 704 (6th Cir. 2012) ................................................................................... 7

*Cablevision of Texas III, L.P.* v. *Oklahoma W. Tel. Co.*,
993 F.2d 208 (10th Cir. 1993) ................................................................................. 3

*Cal. Rest. Ass'n* v. *City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) .................................................................................. 2

*California* v. *FCC*,
39 F.3d 919 (9th Cir. 1994) ..................................................................................... 6

*Chicago & North W. Transp. Co.* v. *Kalo Brick & Tile Co.*,
450 U.S. 311 (1981) ................................................................................................. 4

*China Unicom (Americas) Ops. Ltd.* v. *FCC*,
124 F.4th 1128 (9th Cir. 2024) ............................................................................... 4

*Crosby* v. *Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ................................................................................................. 7

*Gade* v. *Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992) (Kennedy, J., concurring in part) ............................................. 3

*Gen. Tel. Co. of Cal.* v. *FCC*,
413 F.2d 390 (D.C. Cir. 1969) ................................................................................. 4

*ITT World Commc'ns, Inc.* v. *N.Y. Tel. Co.*,
381 F. Supp. 113 (S.D.N.Y. 1974) .......................................................................... 7

*Lomax* v. *Ortiz-Marquez*,
590 U.S. 595 (2020) ................................................................................................. 3

*Louisiana Pub. Serv. Comm'n* v. *FCC*,
476 U.S. 355 (1986) .............................................................................................. 5, 7

*Minnesota Pub. Util. Comm'n* v. *FCC*,
    483 F.3d 570 (8th Cir. 2007) ............................................................................................ 6

*Morales* v. *Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ........................................................................................................ 8

*Pub. Serv. Comm'n of Md.* v. *FCC*,
    909 F.2d 1510 (D.C. Cir. 1990) ..................................................................................... 6

*Puerto Rico* v. *Franklin Cal. Tax-Free Trust*,
    579 U.S. 115 (2016) ....................................................................................................... 2

*Qwest Corp.* v. *Scott*,
    380 F.3d 367 (8th Cir. 2004) ......................................................................................... 4

*United States* v. *California*,
    921 F.3d 865 (9th Cir. 2019) ...................................................................................... 10

*Verizon New England, Inc.* v. *Maine Pub. Util. Comm'n*,
    509 F.3d 1 (1st Cir. 2007) ......................................................................................... 3, 7

*WWC Holding Co.* v. *Sopkin*,
    488 F.3d 1262 (10th Cir. 2007) .................................................................................... 3

**Statutes:**

47 U.S.C. § 214 ............................................................................................................. 2, 3, 7

47 U.S.C. § 214(a) ............................................................................................................... 4

47 U.S.C. § 214(b) ........................................................................................................... 3, 7

47 U.S.C. § 214(c) .............................................................................................. 1-4, 7, 9, 10

47 U.S.C. § 253 ..................................................................................................................... 3

47 U.S.C. § 271(d) ........................................................................................................... 3, 7

47 U.S.C. § 332(c)(3) ........................................................................................................... 3

## INTRODUCTION

California's opposition rests on a single claim:  that its Carrier of Last Resort (COLR) rules are "technology neutral."  That claim is both irrelevant and inaccurate.  It is irrelevant because the FCC has granted AT&T authorization under 47 U.S.C. § 214(c) to grandfather—without any further conditions—the Plain Old Telephone Service (POTS) that AT&T provides over an aging and inefficient copper-wire system.  By requiring AT&T to offer a CPUC-approved substitute service before it may grandfather POTS, California's COLR system imposes conditions beyond the FCC's authorization.  It does not matter whether those conditions are "technology neutral."  Either way, they are preempted.  In fact, the FCC spotlighted California's supposedly "technology neutral" rules as Exhibit A for preempted state laws "that have the practical effect of requiring the carrier to continue providing an interstate or jurisdictionally mixed telecommunications service."  NMO ¶ 112.

Nor is California's COLR scheme technology-neutral in any meaningful way.  California suggests that AT&T need only submit the (again, preempted) paperwork to swap in a superior modern product like AT&T Phone – Advanced, or AP-A.  In fact, history has made clear that California rejects modern wireless-based service as a substitute for POTS—a position it reaffirmed at the FCC just two days before it filed its opposition—and will suffocate an applicant under mountains of red tape first.

California barely contests that the remaining factors support a preliminary injunction.  Its only argument against irreparable harm is that AT&T's injuries are "self-inflicted."  But AT&T now has in hand its federal regulatory authorization and wants to move forward; California is threatening to exact penalties if it does so.  If such penalties qualify as self-inflicted, no preemption plaintiff could ever win.  The balance of equities also favors relief in what should be a win-win situation:  no existing customer will lose service, new customers will receive better service, and AT&T (and the environment) will be spared tens of millions of dollars in waste.  For all of its rhetoric about disadvantaged groups, California has not identified a *single*

3:26-CV-03148
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

- 1 -

Californian who would be left without service if AT&T grandfathers POTS. And the public-interest calculus should be particularly straightforward here where the FCC has already run it and decisively chosen network modernization.

Because the traditional factors support equitable relief, California aims to distract. It mischaracterizes (at 14) an injunction protecting AT&T's federal authorization to grandfather POTS as exempting AT&T from "COLR altogether." But California gets ahead of itself: AT&T does not have federal authorization to discontinue POTS for existing customers. California is arguing about tomorrow, about what might happen in a different case, on a different record. On this record, the Supremacy Clause, the Communications Act, and the NMO all make clear that AT&T may grandfather POTS without California's further blessing.

## **ARGUMENT**

**I.   AT&T Is Likely To Succeed On The Merits Of Its Preemption Claim.**

**A.   Section 214(c) Expressly Preempts California's Requirements.**

California tries to avoid Section 214(c)'s express preemption in three ways: misconstruing Section 214(c), challenging whether California POTS is jurisdictionally mixed, and repeating its "technology neutral" refrain. None works.

1. California begins by invoking (at 15-16) an inapplicable presumption against preemption. When "the statute 'contains an express pre-emption clause,'" courts "do not invoke any presumption against pre-emption but instead 'focus on the plain wording of the clause.'" *Puerto Rico* v. *Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016) (citation omitted). California thus cannot put a "presumptive thumb on the scale" against preemption. *Cal. Rest. Ass'n* v. *City of Berkeley*, 89 F.4th 1094, 1101 (9th Cir. 2024) (citation omitted).

California next misinterprets (at 16) Section 214 as merely ensuring that "no additional *FCC* or *federal* action is required" before AT&T may grandfather POTS. Those words are California's, not Congress's. Congress said that "the carrier may, *without securing approval other than such certificate*," "proceed with" the

3:26-CV-03148
REPLY IN SUPPORT OF MOTION FOR          - 2 -
PRELIMINARY INJUNCTION

"reduction" of service. 47 U.S.C. § 214(c) (emphasis added). This provision allows carriers to modify services immediately once a certificate is in hand. *Cablevision of Texas III, L.P.* v. *Oklahoma W. Tel. Co.*, 993 F.2d 208, 210 (10th Cir. 1993). Contrary to California's invitation to add the word "<u>federal</u>," courts "may not narrow a provision's reach by inserting words Congress chose to omit." *Lomax* v. *Ortiz-Marquez*, 590 U.S. 595, 600 (2020); *see Verizon New England, Inc.* v. *Maine Pub. Util. Comm'n*, 509 F.3d 1, 7 (1st Cir. 2007) (interpreting analogous provisions of Section 271(d) to commit decision "exclusively to the FCC" after state consultation).

California responds (at 18-19) that Congress had to incant a variant of "preemption" in Section 214(c) to "preempt State regulations regarding the reduction or impairment of telephone services." But the Supreme Court has "never required any particular magic words in [its] express pre-emption cases." *Gade* v. *Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 112 (1992) (Kennedy, J., concurring in part). California's own case (at 20) states that "in discerning the limits of a state's regulatory authority, [courts] look past a mere rule of thumb demarcating jurisdiction over interstate or intrastate communications, and instead look to the Telecommunications Act itself." *WWC Holding Co.* v. *Sopkin*, 488 F.3d 1262, 1271 (10th Cir. 2007). Here, Congress addressed how States fit into the framework for service reductions under Section 214, limiting California to consulting with the FCC and enforcing "the provisions of this section." 47 U.S.C. § 214(b), (c). California thus must operate inside—not outside—Section 214 when attempting to regulate service reductions. Although California is right that other provisions explicitly refer to preemption, those provisions also explicitly save a role for parallel state regulation. *Id.* §§ 253, 332(c)(3). The surest guide to preemption is Section 214 itself, not California's incomplete inferences from other provisions.

2. California next insists (at 11-12, 19) that AT&T's all-distance POTS is not jurisdictionally mixed because it is possible to identify which calls begin and end in California and which ones cross state lines. California suggests that AT&T could

3:26-CV-03148
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

- 3 -

simply offer a different service limited to intrastate calling—a hypothetical service that would be of interest to no one in a market full of competing all-distance services. Indeed, California POTS *must* be jurisdictionally mixed because the CPUC requires that any "basic service" permit "calls over all distances."  Ex. 1 at 62.[1]

In any event, the relevant question is whether the all-distance service that AT&T actually offers is "*part* of an interstate line"—*i.e.*, jurisdictionally mixed.  47 U.S.C. § 214(a) (emphasis added).  POTS plainly is.  The copper-wire network carries both interstate and intrastate calls that depend on an "indivisible" network, *Gen. Tel. Co. of Cal*. v. *FCC*, 413 F.2d 390, 402 (D.C. Cir. 1969), of "loops, switches, trunks, powering systems, and support infrastructure," Fahmy Decl. ¶¶ 10-14, Dkt. 10-2; *see* NMO ¶ 107 ("same network using the same technology"); *see also infra*, at 6.  And as the FCC observed, "the vast majority of consumers use the same provider for both their local and long distance toll service."  NMO ¶ 107.  The all-distance service offered by POTS, from the perspective of both AT&T and its customers, is jurisdictionally mixed because it "carr[ies] both interstate and intrastate traffic." *Qwest Corp*. v. *Scott,* 380 F.3d 367, 370 (8th Cir. 2004).

3.  California's repeated protestations (at 1, 13) that its COLR requirements are "technology neutral" are irrelevant.  California may not condition federally authorized grandfathering on a state-approved "basic service" substitute.  What matters is the attempt to require an "approval other than [the federal] certificate," 47 U.S.C. § 214(c), not whether that approval is neutrally awarded.  As the Supreme Court held for an analogous certificate regime giving the federal agency "exclusive discretion" over service reductions for railroads, a State may not impose "sanctions upon a regulated carrier for doing" what the certificate authorizes, even if a State uses "artful" language to block the reduction by another name.  *Chicago & North W. Transp. Co.* v. *Kalo Brick & Tile Co.*, 450 U.S. 311, 324, 326 (1981).  As in *Kalo Brick*, there simply "is no further role" for state law at this stage.  *Id.* at 326; *see China Unicom*

---

[1] All exhibit citations are to exhibits attached to the London Declaration.

3:26-CV-03148
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION                - 4 -

*(Americas) Ops. Ltd.* v. *FCC*, 124 F.4th 1128, 1149 (9th Cir. 2024) (observing that the Communications Act provisions are "modeled on" the *Kalo Brick* scheme).

In any event, California's COLR conditions, despite "purport[ing] to be technology neutral," "have the practical effect of requiring [AT&T] to continue providing" POTS for two reasons.  NMO ¶ 112.

First, although California suggests to this Court (at 13-14) that AT&T could meet its basic-service obligations by replacing POTS with a wireless service such as AP-A, it has said the opposite in other forums (including at the FCC just last week).  The FCC has deemed AP-A "a suitable replacement for a wireline voice service," NMO ¶ 34, and has approved AP-A as a POTS substitute in numerous States.  Fahmy Reply Decl. ¶ 16; *see* Ex. 2 at 76; Ex. 3 at 81.  But the CPUC has taken the position that "current wireless service plans—without wireline at least as a back up—are still not exclusively meeting most consumers' basic service needs."  Ex. 1 at 19; Ex. 4 at 92 ("[W]ireless service" is not "an adequate replacement for a wireline service" without additional proof of coverage beyond what the FCC has accepted).

Second, even apart from the CPUC's repeated rejection of wireless substitutes, the basic-service requirements themselves effectively limit compliance to wireline service.  The CPUC has retained many of the traditional service elements it determined customers had "come to expect" in 1996.  Ex. 5 at 139; *compare* Ex. 5 at 422-423 *with* Ex. 1 at 62-68.  Some of those legacy requirements—including directory listings, white-pages directories, and operator services, Ex. 1 at 62-68—are relics of the wireline ecosystem and a mismatch with modern solutions.  Fahmy Reply Decl. ¶¶ 19-24.  California cannot credibly tout its COLR rules as technology-neutral when it holds every substitute to the wireline standard.

**B.    California's COLR Requirements Are Impliedly Preempted.**

Alternatively, California's COLR requirements are impliedly preempted under both "imposs[ibility]" and "conflict" principles.  *Louisiana Pub. Serv. Comm'n* v. *FCC*, 476 U.S. 355, 368 (1986).

***Impossibility Preemption.***   For much the same reasons that POTS is a jurisdictionally mixed service, separating the "interstate" and "intrastate" components of AT&T's network would be "impossible or impractical."   *Minnesota Pub. Util. Comm'n* v. *FCC*, 483 F.3d 570, 576 (8th Cir. 2007); *see supra*, at 4.   AT&T uses a single integrated network whose interstate and intrastate components cannot practically be separated—it is an all-or-nothing decision to maintain its POTS copper-wire network.   Fahmy Decl. ¶¶ 10-14; Fahmy Reply Decl. ¶¶ 35-38.

California truncates (at 19) its analysis in focusing entirely on whether it is *technologically* possible "to offer the intrastate component of its POTS to new customers."   As the Ninth Circuit explained (in a decision that California was a party to but ignores), impossibility also depends on "economic and operational factors," including whether it would be "economically feasible" to offer separate services "while maintaining separate facilities . . . for the intrastate portion."   *California* v. *FCC*, 39 F.3d 919, 932 (9th Cir. 1994); *see* Mot. 17; *Pub. Serv. Comm'n of Md.* v. *FCC*, 909 F.2d 1510, 1516 (D.C. Cir. 1990).   Economic and operational factors make separate services impossible.   As the CPUC itself has found, customers expect integrated services that let them call not just Monterey, Bakersfield, and Napa, but also Miami, Boston, and New York City. Ex. 1 at 62.   AT&T meets that all-distance demand with a single integrated network for which the interstate and intrastate components cannot be physically unbundled.   Fahmy Decl. ¶¶ 3, 10-14.

In any event, California cannot require AT&T to keep that network in place "merely to provide [California] with an intrastate communication [it] can then regulate," defeating the federal purpose of winding down outdated facilities and freeing up resources for modern services.   *Minnesota*, 483 F.3d at 578; *see* NMO ¶¶ 1-2; Fahmy Reply Decl. ¶¶ 37-38.   There is no practical way to wind down interstate POTS while keeping intrastate POTS operational.   As a result, California's COLR regulations "would effectively negate" the FCC's certificate authorizing AT&T to grandfather POTS.   *California*, 39 F.3d at 933 (citation omitted).

***General Conflict Preemption***. California's COLR regime is also "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby* v. *Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Three conflicts exist here: (1) the COLR regime conflicts with the FCC's exclusive authority over service reductions; (2) California has overstepped its limited role within the Section 214 framework; and (3) California's outdated requirements impede the NMO's federal modernization policy. Mot. 19-20.

As to the first conflict, California resists (at 21-22) the conclusion that the FCC has "exclusive authority" under Section 214(c) to authorize reductions of service like grandfathering. But the FCC interprets Section 214 to establish an "exclusively federal discontinuance regime." NMO ¶ 108. Courts have too. *E.g.*, *ITT World Commc'ns, Inc.* v. *N.Y. Tel. Co.*, 381 F. Supp. 113, 120 (S.D.N.Y. 1974). And States may not undermine the FCC's exercise of that authority. *E.g.*, *BellSouth Telecom., Inc.* v. *Kentucky Pub. Serv. Comm'n*, 669 F.3d 704, 709 (6th Cir. 2012) (same holding as to similarly structured provisions in Section 271); *Verizon New England*, 509 F.3d at 9 (same). As a result, California may not impose additional conditions—here, that AT&T must offer a substitute service to the CPUC's liking—beyond the "terms and conditions" in the FCC's certificate. 47 U.S.C. § 214(c).

As to the second conflict, California invokes (at 22) its "police powers" as a basis to expand its role beyond consulting with the FCC and enforcing violations of the FCC's own orders. But once a service is at least partially interstate, Congress has "taken the regulation" of reductions or discontinuances "away from the States," as it has done for other telecommunications issues. *AT&T Corp.* v. *Iowa Util. Bd.*, 525 U.S. 366, 378 n.6 (1999). Having failed to persuade the FCC during the consultation process in Section 214(b), California cannot now nullify "federal policy" in the name of "States' rights." *Ibid.*; *see Louisiana*, 476 U.S. at 368.

As to the third conflict, California continues to blink reality by characterizing (at 13-14) its COLR rules as consistent with AT&T's authority to grandfather. The

NMO authorizes carriers to grandfather legacy voice services like POTS. NMO ¶¶ 6, 60. The FCC did not condition that authorization on the existence or adequacy of any POTS substitute because it saw little future POTS value and because grandfathering leaves existing customers untouched. NMO ¶¶ 6, 60-66. But while the FCC has given the green light to grandfather POTS, California insists that AT&T must stand ready to furnish POTS to any new customer in its territory, unless AT&T first persuades California that it offers a substitute "basic service." Ex. 6 at 454, 463, 476. California thus bars what the NMO authorized: an immediate shift away from "aging and deteriorating legacy networks that deliver outdated services to an ever-decreasing number of subscribers." NMO ¶¶ 2, 49; *see* Fahmy Reply Decl. ¶¶ 39-42.

## II.   AT&T Will Suffer Irreparable Harm.

California argues (at 22-24) that AT&T cannot show irreparable harm because any harm is "self-inflicted." That is nonsense. The FCC authorized AT&T to grandfather POTS, and AT&T promptly issued customer notices with a standard 60-day period, which expires July 19, 2026. California stands in the way—putting AT&T to the "Hobson's choice" between violating California's rules (and risking enforcement penalties) or declining the FCC's authorization (and suffering business and constitutional injuries). *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). The financial, operational, and competitive harms from California's rules are inflicted by California, not AT&T.

California's contention seems to be that AT&T could simply fill out an application to substitute a different technology and then retire POTS. To be clear, AT&T has fought to make that substitution for years. But California blocked those efforts and sent AT&T to endless bureaucratic purgatory. AT&T sought targeted COLR relief. But California—after 15 months of burdensome proceedings—told AT&T it had no right to even seek such relief without a willing carrier to take its place and barred it from trying again for a year after any COLR reform. Ex. 6 at 472-473, 477. California has since spent more than two years without such reform, most recently

extending its statutory deadlines until February 2027. Ex. 7 at 480. The notion that AT&T need only submit a California regulatory letter to authorize it to substitute AP-A for POTS is disingenuous. Indeed, California told the FCC just *last week* that it would not accept wireless substitutes unless AT&T goes through years of additional process *and* provides reams of impossible-to-obtain evidence *and* receives ultimate approval from the same California bureaucrats who have blocked AT&T at every turn so far.[2]

California next contends (at 24) that AT&T cannot explain the "urgency" in seeking relief from rules that have "persisted for years." But AT&T cannot be accused of moving too *slowly*; it has not had blanket federal authorization to grandfather for all those years. The NMO went into effect on May 20, and AT&T sent notices and filed this lawsuit the same day. California then switches gears and accuses AT&T of moving too *fast*: it suggests (at 24) that AT&T should simply sit on its federal rights and wait for the conclusion of this litigation to grandfather. But every day that California's preempted rules remain in place, AT&T suffers further irreparable harm—mounting operational costs, eroding competitive standing, and decelerating transition to modernization. Mot. 20-24. The Supremacy Clause does not tolerate California's suggestion that AT&T is moving too fast to act on its federal rights.

**III.  The Equities And Public Interest Weigh Heavily In AT&T's Favor.**

The remaining equitable factors decisively cut against California's rules. California never disputes that, if its laws are preempted, the balance of the equities and public interest decisively favor an injunction. California has no interest in "act[ing] unlawfully." *Alabama Ass'n of Realtors* v. *HHS*, 594 U.S. 758, 766 (2021). And

---

[2] The CPUC's assertion (at 9) that AP-A could be approved through a Tier 2 Advice Letter is difficult to square with the CPUC's own rules and recent practice. The CPUC has indicated that wireless basic-service technologies may require Tier 3 review, including Commission approval and potentially a formal proceeding. Ex. 1 at 50; Ex. 8 at 548-549. Even if Tier 2 were available, AT&T's experience demonstrates that the process is far from ministerial: a recent approval took three successive advice-letter filings and nearly two years. Ex. 9 at 554; Ex. 10 at 556; Ex. 11 at 558. And in the end, even a fast state process is still an extra condition that Section 214(c) forbids.

3:26-CV-03148
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
- 9 -

"preventing a violation of the Supremacy Clause serves the public interest." *United States* v. *California*, 921 F.3d 865, 893 (9th Cir. 2019). Because California's rules violate "Congress' decision" on how to regulate this industry, equity supports a preliminary injunction. *Am. Trucking Ass'ns, Inc.* v. *City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009).

California claims (at 24-25) that grandfathering might cause service gaps and leave customers without emergency services. It offers nothing to back up that claim. No existing customer will lose service from grandfathering. Ray Decl. ¶ 7, Dkt. 10-3. Prospective customers do not want POTS, and AT&T has received only the tiniest trickle of new POTS orders—just a few dozen a month, and each one in a place with a substitute service from AT&T (and likely from its many competitors too). Fahmy Reply Decl. ¶¶ 31-34. The Court can search California's hundreds of pages of declarations and will not find evidence that a single would-be new customer of POTS lacks access to alternatives. *Id.* at ¶¶ 35-36; Ray Decl. ¶ 7. That means California is demanding that AT&T spend tens of millions of dollars each year and keep unused equipment humming with wasted electricity, *see* Mot. 21-22, based on implausible and unsupported speculation that someday such a customer could materialize.

To be clear, AT&T does not dispute (at 25) that the "'public interest is advanced by sustaining universal service.'" But grandfathering is a step to transitioning customers to modern systems, which are better and more efficient than last century's POTS technology. *See* Fahmy Reply Decl. ¶¶ 7-9, 25-29. The bipartisan FCC closely considered customer welfare and concluded that grandfathering old POTS systems serves the "'public convenience and necessity.'" NMO ¶¶ 2, 6; 47 U.S.C. § 214(c). Nothing California has said should make this Court second-guess the FCC's conclusion.

## CONCLUSION

This Court should grant AT&T's motion and enjoin the provisions listed therein, to the extent they condition or impede immediate grandfathering of POTS.

Dated: June 24, 2026

**GIBSON, DUNN & CRUTCHER LLP**


By: /s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.
*Attorney for Plaintiff Pacific Bell Telephone Company d/b/a AT&T California*

THEODORE J. BOUTROUS, JR.,
SBN 132099
  tboutrous@gibsondunn.com
JILLIAN N. LONDON, SBN 319924
  jlondon@gibsondunn.com
PATRICK J. FUSTER, SBN 326879
  pfuster@gibsondunn.com
BRANTON J. NESTOR, SBN 338445
  bnestor@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000

JEFFREY B. WALL (*pro hac vice*)
  jwall@gibsondunn.com
MORGAN L. RATNER (*pro hac vice*)
  mratner@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone:  202.955.8533

*Attorneys for Plaintiff Pacific Bell Telephone Company d/b/a AT&T California*