**GIBSON, DUNN & CRUTCHER LLP**
THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
JILLIAN N. LONDON, SBN 319924
  jlondon@gibsondunn.com
PATRICK J. FUSTER, SBN 326879
  pfuster@gibsondunn.com
BRANTON J. NESTOR, SBN 338445
  bnestor@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

JEFFREY B. WALL (*pro hac vice*)
  jwall@gibsondunn.com
MORGAN L. RATNER (*pro hac vice*)
  mratner@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8533

*Attorneys for Plaintiff Pacific Bell Telephone
Company d/b/a AT&T California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN REYNOLDS, in his official capacity as President of the California Public Utilities Commission; DARCIE L. HOUK, KAREN DOUGLAS, MATTHEW BAKER, and CHRISTINE HARADA, in their official capacities as Commissioners of the California Public Utilities Commission; ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>Defendants. | Case No. 3:26-cv-03148-LL-JAC<br><br>**DECLARATION OF DR. HANY FAHMY**<br><br>Judge:  Honorable Linda Lopez<br><br>Courtroom:  14B<br><br>Hearing Date:  July 1, 2026 |

**DECLARATION OF DR. HANY FAHMY**

I, Hany Fahmy, hereby declare as follows:

## I.    QUALIFICATIONS AND BACKGROUND

1.    I am an Assistant Vice President of Technology Policy and Regulatory at AT&T Services, Inc.  I have worked for AT&T since 1998, including 17 years in AT&T Bell Labs.  I hold a Ph.D. in Electrical and Computer Engineering and have extensive experience with wireline and wireless telecommunications networks, voice services, and network modernization efforts.

2.    In connection with AT&T's motion for preliminary injunction, I submitted a declaration describing the architecture of AT&T California's legacy copper-based Plain Old Telephone Service ("POTS") network and explaining why the network's interstate and intrastate functions cannot be retired separately for purposes of network retirement.

3.    I submit this declaration in connection with AT&T's reply in response to several assertions made in Defendants' opposition concerning AT&T Phone-Advanced ("AP-A"), a modern voice service that AT&T has used as a replacement for POTS.

4.    I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently hereto.

## II.    OVERVIEW OF AT&T PHONE-ADVANCED

5.    In their opposition, Defendants characterize AP-A in a manner that, in my opinion, does not accurately reflect how the service operates or the capabilities it provides.  Based on my experience with AP-A and my involvement in AT&T's network modernization efforts, I provide the following information concerning the service.

6.    AP-A is a fixed-location voice service that utilizes AT&T's wireless LTE network and Internet Protocol ("IP") technology to provide voice communications.  It can also work with other broadband services.

- 1 -                    DECLARATION OF DR. HANY FAHMY

7.     AP-A was designed as a replacement voice service for residential customers transitioning from POTS.  The AP-A device is installed at a fixed location within a customer's premises and connects to existing landline telephones and other compatible equipment.

8.     AP-A is compatible with many devices traditionally associated with POTS, including standard telephones and numerous alarm, medical-monitoring and facsimile devices.

## III.   AP-A PROVIDES MODERN VOICE SERVICE CAPABILITIES AND HAS BEEN WIDELY DEPLOYED AS A REPLACEMENT FOR POTS

9.     Because Defendants question whether AP-A is an adequate replacement for POTS, I explain below that AP-A provides the key functionality of POTS, and even offers additional benefits.

10.    AP-A provides access to 911 and Enhanced 911 emergency services.

11.    AP-A supports location functionality designed to assist emergency responders in identifying the location of the customer.

12.    AP-A is compatible with telecommunications relay services and related technologies used by individuals with hearing or speech disabilities.

13.    AP-A provides customers with access to toll-free numbers and long-distance calling.

14.    AP-A includes features commonly associated with modern voice services, including caller identification, call waiting, call forwarding, voicemail, three-way calling, and unlimited domestic long-distance calling.

15.    AT&T offers AP-A at prices that are comparable to or lower than POTS. AP-A's residential monthly rate is $45, which is $5 less than the $50 rate for AT&T basic POTS service.  AP-A also has a $0 promotional installation fee, while POTS carries a $49 one-time installation charge.

GIBSON, DUNN & CRUTCHER LLP

- 2 -                    DECLARATION OF DR. HANY FAHMY

16.    I understand that the FCC has granted AT&T discontinuance from providing POTS in portions of 18 states based on the availability of AP-A.  AT&T is currently seeking discontinuance in parts of California based on AP-A.

17.    In connection with seeking discontinuance in California, AT&T offers AP-A to eligible California LifeLine customers impacted by its application at a discounted rate of $25 per month.

18.    These deployments have already occurred in a variety of the geographic settings and topographies where Defendants suggest there may be service gaps, including in urban, suburban, and rural communities with hilly and flat terrain.

## IV.    CERTAIN CALIFORNIA "BASIC SERVICE" REQUIREMENTS REFLECT FEATURES ASSOCIATED WITH POTS

19.    I understand that Defendants' opposition discusses California's "basic service" requirements that reflect features traditionally associated with POTS and that do not have an AP-A or any modern mobile or VoIP equivalent.

20.    For example, requirements relating to white-pages directories, directory listings, directory assistance, and operator services were developed during an era in which voice communications were primarily provided through traditional wireline networks.

21.    Modern wireless and IP-based voice services generally do not rely upon those features in the same manner as traditional POTS offerings.

22.    Consumer use of these legacy features has declined substantially as customers have transitioned to wireless, broadband, and IP-based communications platforms.

23.    Additionally, my understanding of California's basic service requirements is that they require voice service that permits customers to place and receive calls over all distances, including interstate calls.  As discussed in my prior declaration, the ability to originate and terminate interstate calls over POTS depends on the same underlying copper loops, switches, trunks, and supporting infrastructure

that carry intrastate traffic.  Historically, prior to the advent of local competition, customers often obtained local telephone service from one provider and long-distance service from another.

24.    In today's competitive marketplace, however, consumers generally purchase wireless, VoIP, or bundled voice services that include long-distance calling as part of a single offering.  In my experience, consumers today generally expect to be able to call any number regardless of distance, and the historical distinction between local and long-distance calling has largely disappeared.  AP-A follows this modern approach.  Customers using AP-A may place and receive interstate and long-distance calls as part of the AP-A service itself without subscribing to a separate long-distance provider.  Customers pay a flat rate for unlimited monthly calling.

## V.    AP-A PROVIDES RELIABLE SERVICE

25.    Defendants suggest in their opposition that wireless and IP-based voice services are inherently less reliable than POTS.

26.    In my experience, this is wrong.  Modern wireless and IP-based voice services like AP-A provide reliable communications capabilities and are widely used by consumers throughout California and the United States.

27.    Moreover, AP-A devices are not the same as typical modern cellphones.  AP-A devices contain antennas substantially larger than those used in ordinary mobile devices and are designed to operate from fixed locations selected to maximize signal strength, such as near a window or at an upper floor of a residence.  Where appropriate, AT&T may provide an outdoor antenna to improve signal reception at no additional cost.  If a professional installation is requested, technicians actually test the signal during a customer's initial setup, so if a customer is unable to obtain an adequate signal, AT&T can install, at no additional charge and without a separate waiting period, an outdoor antenna that the technician brings to each appointment.  Because AP-A can utilize an outdoor antenna where necessary, the National

Broadband Map's outdoor coverage predictions provide a conservative and reliable measure of AP-A service availability.

28.    AP-A devices also include 24-hour battery-backup capabilities designed to permit continued operation during commercial power outages.  Consumers can also purchase additional batteries if they want more than the automatic 24-hour backup.

29.    In addition, AP-A is supported by modern network infrastructure that may be restored following severe weather and other emergencies using portable network equipment and other restoration tools that are not available for aging copper infrastructure.

## VI.    AVAILABILITY OF ALTERNATIVE SERVICES TO NEW POTS CUSTOMERS

30.    Defendants' opposition raises concerns regarding the availability of alternative services if POTS is grandfathered.  Based on my review of AT&T's records to date, those concerns are inconsistent with the availability of alternative AT&T voice services in California.

31.    I have reviewed AT&T records concerning new residential POTS service activations during May 2026.

32.    During that month, AT&T received 47 new residential POTS service orders in the 360 impacted California wire centers.

33.    Based on my review, every one of those locations had access to AP-A.

34.    Accordingly, none of those customers would have been left without an available AT&T voice-service option if POTS had been grandfathered.

## VII.    POTS CANNOT BE PRACTICALLY GRANDFATHERED ON AN INTERSTATE-ONLY BASIS

35.    I understand that Defendants contend there is a clear demarcation between intrastate and interstate POTS service because a call either is, or is not, handed off to an interexchange carrier.  Defendants say AT&T could simply offer a different service limited to intrastate calling, but that is not a realistic solution.  In my

GIBSON, DUNN & CRUTCHER LLP

- 5 -                    DECLARATION OF DR. HANY FAHMY

opinion, that observation does not resolve the engineering concerns identified in my original declaration.  It also does not change my understanding that POTS is indeed jurisdictionally mixed, and that AT&T cannot practically grandfather POTS on an interstate-only basis.  In today's age, it is unlikely that many, if any, consumers would purchase a service that only works within California's state lines where competing wireless and wireline telephone services all offer all-distance calling.

36.    As explained in my original declaration, the copper-wire network is a mixed inter- and intrastate network.  The same local loops, Class 5 switches, Class 4 switches, trunks, and supporting systems are used to provide both telephone exchange service (that is, local calling within a telephone exchange area) and exchange access service (that is, the capability to originate and terminate long-distance calls the end points of which are in two different exchanges, which could be in the same state or different states—in which case the calls are "interstate").  The fact that a call may ultimately be handed off to a long-distance carrier does not eliminate the need to maintain those underlying facilities and systems, which are used for both interstate and intrastate calling.  There is also a single charge for the service that covers all intrastate and interstate calls.

37.    Even if AT&T California were to restrict or discontinue certain interstate functionalities, it would still need to maintain the same Class 5 switches, Class 4 switches, time division multiplexing ("TDM") transport facilities, and related infrastructure in order to continue providing POTS service.  As a result, the approach suggested by Defendants would not materially reduce the operational burden associated with maintaining the POTS network.  And it would be a significant economic burden to AT&T, requiring the company to maintain the same network it has today even though it would no longer provide interstate calling capabilities.

38.    The principal engineering concern is not the jurisdictional classification of particular calls.  The concern is the continued operation of this legacy TDM infrastructure required to support POTS.  In my experience, those systems have

GIBSON, DUNN &
CRUTCHER LLP

- 6 -                    DECLARATION OF DR. HANY FAHMY

exceeded their intended service lives by decades and are increasingly difficult to maintain because of end-of-life (i.e., aging) equipment, limited vendor support, and the scarcity of replacement parts and personnel with relevant expertise.

## VIII.  THE EXISTENCE OF POTS-OVER-FIBER CUSTOMERS DOES NOT RESOLVE THE UNDERLYING ENGINEERING CONCERNS

39.    I understand that Defendants point to the fact that AT&T currently serves certain POTS customers using last-mile fiber facilities to suggest that the challenges associated with the legacy POTS network can be addressed through deployment of fiber facilities rather than retirement of the network.  As an initial matter, AT&T has only deployed POTS over fiber to a minority of customer locations – typically where the existing copper facilities have been removed or destroyed due, for example, to a road move or a natural disaster.  In my opinion, it is not economically feasible to use fiber to serve all customer locations in AT&T's service territory in California, and, further, providing POTS over last-mile fiber does not ameliorate the underlying engineering issues that require AT&T to spend heavily on outdated equipment and electricity—resources that could otherwise be spent on modernization.

40.    AT&T used to be able to offer copper facilities ubiquitously because it had a franchise monopoly and could rely on implicit cross-subsidies in its rate structure.  The same cannot be said for the deployment of fiber networks today because there is competition everywhere.  The implicit subsidies AT&T once relied on are gone.  Additionally, in areas where cable was the first mover for high-capacity broadband, AT&T cannot necessarily deploy fiber because the company is unlikely to draw a sufficient number of customers away from the first movers.  Widespread fiber deployment is thus not practicable from an economic perspective.

41.    More importantly, replacing a copper access loop with fiber does not eliminate the underlying TDM infrastructure required to provide POTS service.

GIBSON, DUNN & CRUTCHER LLP

- 7 -                DECLARATION OF DR. HANY FAHMY

POTS customers served over last-mile fiber connections continue to rely upon the same legacy TDM switching and transport architecture, including Class 5 switches, Class 4 switches, TDM transport facilities, and associated equipment – much of which, again, is obsolete and manufacturer-discontinued.

42.    Accordingly, the fact that AT&T currently serves some POTS customers over last-mile fiber connections does not resolve the engineering concerns associated with maintaining the legacy TDM infrastructure necessary to support POTS service.  In my opinion, continued reliance on that legacy infrastructure is not a viable long-term solution regardless of whether the customer's last-mile connection is using copper or fiber.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 24, 2026.

Dr. Hany Fahmy
Assistant Vice President,
Technology Policy and Regulatory, AT&T
Services, Inc.

GIBSON, DUNN & CRUTCHER LLP

DECLARATION OF DR. HANY FAHMY