ROB BONTA
Attorney General of California
TODD GRABARSKY
Supervising Deputy Attorney General
SABRINA T. MCGRAW
VIVIANA M. HANLEY
CAMILLE FRAMROZE
Deputy Attorneys General
State Bar No. 332075
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3916
Fax: (415) 703-5480
E-mail: Camille.Framroze@doj.ca.gov
*Attorneys for Defendants John Reynolds, Darcie L. Houck, Karen Douglas, Matthew Baker, Christine Harada, and Rob Bonta, in their official capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA,**<br>Plaintiffs,<br>**v.**<br>**JOHN REYNOLDS, in his official capacity as President of the California Public Utilities Commission; DARCIE L. HOUCK, KAREN DOUGLAS, MATTHEW BAKER, and CHRISTINE HARADA, in their official capacities as Commissioners of the California Public Utilities Commission; ROB BONTA, in his official capacity as Attorney General of the State of California,**<br>Defendants. | 3:26-cv-03148-LL-JAC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: November 5, 2026<br>Dept: Courtroom 14B<br>Judge: Hon. Linda Lopez<br>Trial Date: Not Set<br>Action Filed: May 20, 2026<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

# TABLE OF CONTENTS


**Page**

Introduction ........ 1

Argument ........ 2

I. There Can Be No Express Preemption Under Section 214 ........ 2

A. There Is No "Clear Statement" of a Congressional Attempt to Preempt State Law ........ 2

B. CPUC Approval Is Not Required for AT&T to Retire Its Copper Wire, but Rather Only for AT&T's *Substitute* Service ........ 3

II. There Can Be No Implied Preemption Because AT&T Is Already Free to Retire Its Service Offered Via Copper Wire ........ 7

A. The Presumption Against Preemption Applies ........ 7

B. As AT&T Concedes, the COLR Rules Do Not Require Copper Wire, in Name or in Practice ........ 8

C. The Impossibility Exception Under Section 2 of the Act Does Not Apply ........ 10

Conclusion ........ 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Cablevision of Texas III, L.P. v. Okla. W. Tel. Co.*
993 F.2d 208 (10th Cir. 1993) ........ 6

*Chicago & North W. Transp. Co.* v. *Kalo Brick & Tile Co.*
450 U.S. 311 (1981) ........ 5

*Crosby v. Nat'l Foreign Trade Council*
530 U.S. 363 (2000) ........ 8

*ITT World Commc'ns Inc. v. N.Y. Tel. Co.*
381 F. Supp. 113 (S.D.N.Y. 1974) ........ 6

*KalshiEX, LLC v. Assad*
No. 25-7516, 2026 WL 2543846 (D. Nev. Aug. 28, 2026) ........ 2

*MetroPCS California, LLC v. Picker*
970 F.3d 1106 (9th Cir. 2020) ........ 7

*Qwest Corp. v. Ariz. Corp. Comm'n*
567 F.3d 1109 (9th Cir. 2009) ........ 8

*Ting v. AT&T*
319 F.3d 1126 (9th Cir. 2003) ........ 8

*Verizon New England, Inc. v. Maine Public Utilities Commission*
509 F.3d 1 (1st Cir. 2007) ........ 5

*Western Union Telegraph Co. v. State*
63 S.E.2d 878 (Ga. 1951) ........ 6

*Wyeth v. Levine*
555 U.S. 555 (2009) ........ 3

**STATUTES**

47 U.S.C. § 214 ........ *passim*

47 U.S.C. § 253 ........ 4

47 U.S.C. § 271 ........ 5

## TABLE OF AUTHORITIES
**(continued)**

**Page**

**OTHER AUTHORITIES**

47 CFR § 9.1 *et seq*. 7

## INTRODUCTION

At long last, Plaintiff Pacific Bell Telephone Company ("AT&T") has admitted to what the California Public Utilities Commission ("CPUC") has suspected all along: this lawsuit is nothing but a smokescreen. AT&T does not wish to merely replace the service it offers via copper wire with new technology. It is already able to do that; indeed, as this Court has found, AT&T has been entitled for years to upgrade the technology over which it provides basic service, as long as the service itself meets the Carrier of Last Result ("COLR") requirements. Rather, what AT&T really wants is to stop providing basic service—the minimum level of telephone service to which Californians are entitled—altogether. In fact, as it now admits, "AT&T has *already* grandfathered its [plain old telephone service ("POTS")] without providing a CPUC-compliant substitute," Opposition to Motion to Dismiss, Dkt. 61 ("Opp.") at 11, and it accordingly now seeks release from its COLR obligation to do so.[1] But that relief has no place in this preemption lawsuit, because the Federal Communications Commission's ("FCC") orders only allow AT&T to retire the service it offers via copper wire. The FCC has said nothing of state law standards and regulations that AT&T's ***replacement*** service must meet and follow—indeed, as one Commissioner points out, the FCC expressly disclaimed any intent to preempt "state consumer protection laws" or "state universal service obligations" in its Network Modernization Order ("NMO"). As a result, so long as the COLR rules do not ***require*** the use of copper wire—and AT&T concedes that they do not—they cannot be preempted.

Both of AT&T's preemption claims fail as a matter of law. AT&T cannot succeed on its express preemption claim, because section 214(c) of the

[1] Based on this admission, Defendants withdraw their arguments with regard to standing, but reserve all rights to reassert standing-related defenses at a different juncture. *See* Opp. at 11 ("California argued [] that AT&T has not alleged that it will 'violate the COLR rules' or 'prompt enforcement action.' But that is exactly what it alleges. AT&T has *already* grandfathered POTS without providing a CPUC-compliant substitute").

Communications Act ("Act") contains no clear statement evincing an intent to preempt state law and, in any event, AT&T does not need CPUC's "approval" to retire its service offered via copper wire, so long as it continues to offer basic service by some other means. Nor can AT&T succeed on its implied preemption claim, because the COLR rules—as this Court has already held—are technology-neutral, and do not explicitly or implicitly necessitate copper wire. As no amendment can cure these defects (indeed, AT&T has already tried once), this lawsuit should be dismissed with prejudice.

## ARGUMENT

### I. THERE CAN BE NO EXPRESS PREEMPTION UNDER SECTION 214

#### A. There Is No "Clear Statement" of a Congressional Attempt to Preempt State Law

AT&T remains unable to point to any explicit congressional intent to preempt state law in section 214 of the Act. Without that, AT&T cannot state a plausible express preemption claim. *See* Motion to Dismiss, Dkt. 60-1 ("Mot.") at 16–19.

*KalshiEX, LLC v. Assad*, on which AT&T relies, underscores what is lacking here. Opp. at 15–16. There, the Ninth Circuit concluded that section 2(a)(1)(A) of the Commodity Exchange Act preempts "state law regulating swaps 'traded or executed' on a [designated contract market]." No. 25-7516, 2026 WL 2543846, at *7. In so holding, the court relied on the explicit reference to state law in the savings clause of section 2(a)(1)(A): "*[E]xcept as hereinabove provided*, nothing contained in this section shall … supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or *of any State*." *Id.* Here, section 214 does not contain an equivalent mention of preemption, or of state regulatory authority. *See* 47 U.S.C. § 214(c). Although there need not be "***magic*** words" effectuating preemption, perhaps, *KalshiEX*, 2026 WL 2543846, at *7 (emphasis added), *see* Opp. at 15, there do need to be ***some*** words.

Moreover, AT&T does not attempt to distinguish *Wyeth v. Levine*, in which the Supreme Court relied on the fact that Congress had enacted an express preemption provision for medical devices, but not for prescription drugs, to hold the petitioner's state law failure-to-warn claims regarding the drug Phenergan not preempted. 555 U.S. 555, 575, 581 (2009) (discussed in Mot. at 18–19). The same conclusion applies here: where Congress did intend elsewhere in the Act to preempt state law, it did so unambiguously, but it chose not to in section 214.

### B. CPUC Approval Is Not Required for AT&T to Retire Its Copper Wire, but Rather Only for AT&T's *Substitute* Service

AT&T argues that CPUC has rules that "require state approval to switch to a new basic service" and that, as a result, the COLR rules are preempted, because section 214(c) states that a carrier requires no "approval other than [the FCC's] certificate." Opp. at 4, 7; *see id.* at 17–19, 20–21. But each of the so-characterized three "approvals" on which AT&T relies—*i.e.*, the requirements that AT&T (i) provide a "replacement service," that (ii) offers more than "what federal law requires," and (iii) is tariffed, *id.* at 17—pertain in AT&T's own words to the "***substitute 'basic service'***" it must offer, not to the discontinuance for which FCC permission was granted. *See*, *e.g.*, *id.* at 8 (referring to steps needed "to satisfy substantive and procedural requirements governing any ***replacement service***") (emphasis added). This distinction matters, as only the latter is relevant to AT&T's claim that the FCC's orders preempt California's COLR rules. As a result, any substantive criteria the substitute service must meet, or any procedural steps AT&T must take to offer it, are not preempted. Put differently: if AT&T were not a COLR, it would, under the applicable CPUC rules, be permitted to retire its service offered over copper wire without providing an alternative service or filing a tariff memorializing it. Those are therefore plainly not obligations that attach to the retiring of copper wire facilities. *See* 47 U.S.C. § 214(c). They are obligations that attach to ***COLR*** status, which section 214(c) does not touch.

Critically, the distinction that Defendants draw here is precisely the distinction that the FCC carefully drew in its NMO. As FCC Commissioner Anna M. Gomez notes in her Statement:

> States are often the first line of defense for consumers navigating problems with their communications services, and their authority in these areas is not diminished by today's action. The preemption framework adopted here is ***appropriately scoped to the discontinuance*** of interstate and jurisdictionally mixed services, and ***does not reach state consumer protection laws, state universal service obligations***, or state authority over 911 service.

Ex. E[2] at 77 (emphasis added). The limited nature of the NMO is also apparent from the FCC's response to public comments referring to section 253 of the Act. Ex. E ¶ 111. That section pertains to barriers to entry into the telecommunications market and includes the following savings clause in sub-section (b): "Nothing in this section shall affect the ability of a State to impose … requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253(b). The commenters argued that the provision "preserves several COLR obligations" in the context of the NMO. Ex E. ¶ 111. The FCC cited to these comments and expressed its disagreement only "[t]o the extent these commenters suggest that section 253(b) gives states ***discontinuance authority*** over interstate services or jurisdictionally mixed services …" *Id.* (emphasis added). The FCC made no mention of any other authority States possess under their COLR rules. As a result, to hold that the COLR rules—which, in AT&T's own words, do not stop AT&T from retiring its service offered via copper wire so long as Californians continue to receive basic service by other means—are preempted by section 214(c) would impermissibly expand the ambit of the NMO beyond the boundaries that the FCC drew.

[2] All citations to exhibits refer to those attached to Defendants' Request for Judicial Notice. Dkt. 60-2.

The case law AT&T cites in fact illustrates this distinction. Opp. at 14–15. In *Verizon New England, Inc. v. Maine Public Utilities Commission*, the provision at issue was section 271 of the Act, which sets out conditions that incumbent regional "former Bell System operating companies" must meet to secure "FCC permission to provide long distance service." 509 F.3d 1, 5 (1st Cir. 2007). The Maine and New Hampshire Public Utilities Commissions argued that they had authority to "determine what elements Verizon [was] required to provide under section 271 and [] set rate policy for those elements." *Id.* at 7. The First Circuit disagreed, finding that "authority under section 271 is granted exclusively to the FCC." *Id.* (emphasis omitted). Here, however, Defendants are not arguing that they have the ***discontinuance*** authority granted to the FCC in section 214(c). The parties agree: that statutory authority to discontinue interstate service remains with the FCC. Defendants are simply arguing that ***otherwise*** applicable state laws and regulations that generally govern telephone service in the State are not preempted by the FCC's orders. *See* Opp. at 16–17.

In *Chicago & North W. Transp. Co.* v. *Kalo Brick & Tile Co.*, a railway line operated by the petitioner was damaged. 450 U.S. 311, 314 (1981). Under the Interstate Commerce Act, the Interstate Commerce Commission was responsible for regulating the abandonment of railroad lines; accordingly, the petitioner applied to the Commission for a certificate permitting it to abandon the line, which was granted. *Id.* The respondent—a shipper using the railway line—filed a damages action, arguing that the petitioner had violated Iowa statutory and common law. *Id.* at 315. The court found that the state law was preempted because it "amount[ed] to a holding that a State can impose sanctions upon a regulated carrier for doing that which only the Commission … has the power to declare unlawful or unreasonable." *Id.* at 324. Here, in contrast, the COLR rules do not ***stop*** AT&T from retiring its service offered over copper wire. They simply require that basic service continue to be provided by some other means.

And finally, even in *Western Union Telegraph Co. v. State*—a non-binding Georgia state court case from 1951—Western Union applied to the FCC under section 214 for permission to discontinue an office. 63 S.E.2d 878, 880 (Ga. 1951). The FCC granted the application, but Georgia sued Western Union for its failure to obey a rule of its state public service commission, which prohibited "discontinuing" an office "without authority granted by" the commission, and imposed a penalty. *Id.* at 880. The state supreme court found that there was no "lawful basis for a recovery of a penalty" because the rule was preempted. *Id.* at 884–85. There is no such equivalent COLR rule that prevents AT&T from discontinuing the service it offers over its copper wire; AT&T (or another COLR) must simply continue to offer basic service through some other technology.[3]

In attempting to manufacture a conflict between the NMO and the COLR rules, AT&T also claims that CPUC's "approval" process for its substitute service requires a Tier 3 advice letter. Opp. at 17. This claim is irrelevant, because any purported approval process applies to AT&T's ***substitute*** service, not to the mere decision to retire copper wire that is permitted under the NMO.[4] In any event, however, the argument is unfounded. In support, AT&T cites CPUC's 2012 decision, but it misleadingly quotes only one portion of one sentence. *Id.* at 6, 17. Read in full, CPUC held that "[a]ny carrier that is not a traditional wireline provider of basic service will be required to make a showing by filing a Tier 3 Advice Letter

[3] The remainder of the cases AT&T cites, Opp. at 13–16, do not concern a conflict between federal and state law. *See ITT World Commc'ns Inc. v. N.Y. Tel. Co.*, 381 F. Supp. 113, 123 (S.D.N.Y. 1974) (enjoining discontinuance of service "until the FCC either determines that a certificate … should issue … or is not required"); *Cablevision of Texas III, L.P. v. Okla. W. Tel. Co.*, 993 F.2d 208, 210 (10th Cir. 1993) (federal court could not keep in place a permanent injunction where the FCC had issued a certificate allowing it).

[4] To the extent that the Court interprets CPUC's procedural rule requiring an advice letter for AT&T's substitute service as "an approval" and determines, contrary to Defendants' arguments, that Section 214(c) expressly preempts such additional "approval," that would only support enjoining this particular COLR rule. It would not support AT&T's request that this Court find the entire body of COLR rules preempted.

***that demonstrates its capability to provide 911/E911*** …" Ex. B at 23 (emphasis added). Further, "once the necessary rules and guidelines are established through an approved Resolution, carriers will be allowed to file Tier 2 Advice Letters …" *Id.* at 23–24. Today, the COLR rules regarding 911 services duplicate the requirements that already exist—and to which carriers like AT&T are therefore already subject—in federal law. *See*, *e.g.*, 47 CFR § 9.1 *et seq*. As a result, ***even*** as to this one 911 element, there is no need for COLRs to file Tier 3 letters. AT&T also cites a CPUC filing in an FCC proceeding. Opp. at 6, 17. There, CPUC simply noted that a provider "utilizing anything other than traditional exchange-based wireline technology that ***cannot comply***" with the requirements of basic service must file a Tier 3 letter. Ex. N at 16 (emphasis added). That only underscores Defendants' point. There is no substantive "approval" process for retiring a service provided over copper wire facilities; the approval process is for deviating from the requirements of basic service. *Id.*[5]

## II. THERE CAN BE NO IMPLIED PREEMPTION BECAUSE AT&T IS ALREADY FREE TO RETIRE ITS SERVICE OFFERED VIA COPPER WIRE

### A. The Presumption Against Preemption Applies

At the outset, AT&T's assertion that the presumption against preemption[6] does not apply here because "'there has been a history of significant federal presence'" in regulating "'long-distance telecommunications'" is incorrect. Opp. at 20 (quoting *Ting v. AT&T*, 319 F.3d 1126, 1144 (9th Cir. 2003) and citing *Qwest Corp. v. Ariz. Corp. Comm'n*, 567 F.3d 1109 (9th Cir. 2009)). In *MetroPCS*

[5] AT&T also argues that even the ministerial Tier 2 advice letter process is onerous because "any person" may protest a Tier 2 advice letter and request an evidentiary hearing. Opp. at 17–18. But the letters to which AT&T refers in support of this argument involved no public comment process whatsoever: they were, as AT&T's own exhibits show, ***not*** "Protested." Dkt. 32-2, Exs. 9–11.

[6] Defendants argued that the presumption against preemption applied to AT&T's implied preemption claim. Mot. at 21–22; *see* Opp. at 15. As noted in *KalshiEX*, however, on which AT&T relies, Opp. at 15, "'the law remains troubling and confused' as to whether we apply a presumption against preemption to express preemption provisions." 2026 WL 2543846, at *7 (citation omitted).

*California, LLC v. Picker*, the Ninth Circuit considered whether federal law preempted California law "governing universal service contributions from … prepaid wireless providers." 970 F.3d 1106, 1109 (9th Cir. 2020). The Ninth Circuit concluded that the presumption against preemption (implied or otherwise) applied. *Id.* at 1119. Specifically, it held that the decisions in *Qwest Corp.* and *Ting* "were distinguishable … because they involved state laws covering a part of the regulatory scheme that was traditionally dominated by the FCC." *Id.* By contrast, in *MetroPCS*, as in the present lawsuit, the laws at issue "were focused on regulating *intrastate* telecommunications to further state universal service effects"—an area "'traditionally occupied' by the states." *Id.* (citation omitted). AT&T has failed to rebut the presumption here.

### B. As AT&T Concedes, the COLR Rules Do Not Require Copper Wire, in Name or in Practice

AT&T makes three attempts to show that the COLR rules pose "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (internal quotations and citation omitted). All three attempts fail.

***First***, AT&T already concedes that there isn't a "single rule that expressly says 'AT&T must provide POTS …'" Opp. at 7. And this Court has already recognized that the COLR rules are technology-neutral. Mot. at 9–10. As a result, AT&T argues instead that the basic service elements nevertheless "amount" to a requirement to provide service over copper wire. Opp. at 7; *see also id.* at 5, 11, 19, 21. Rhetoric aside, however, there are only two elements with which AT&T actually takes issue: the requirements for "directory services and operator assistance." *Id.* at 6; *see id.* at 21–22. But AT&T concedes (as it must) that it ***can*** offer those features with other technologies, including wireless service; it simply chooses not to do so. *See*, *e.g.*, *id.* at 8 ("AT&T will incur costs … adding outdated features to craft a substitute 'basic service'"); *id.* at 21 (acknowledging and not

refuting California's argument that "AT&T *could* change its modern offerings[7] to include these outdated features"); *id.* at 22 n.2. Whether these elements are "antiquated," *id.* at 6, or more "onerous" than federal requirements , *id.* at 1, or "rarely" used, *id.* at 6, is a red herring; all that is relevant to this preemption lawsuit is that these elements plainly do not necessitate the use of copper wire or make any other technology impracticable. This ends the matter.

***Second***, AT&T argues that CPUC "views wireless generally and AP-A [AT&T's Phone – Advanced] specifically as a second-class service" and that this effectively compels AT&T to continue providing service via copper wire. *Id.* at 7; *see id.* at 22. That is plainly false: as Defendants explained in their Motion, and as AT&T ignores entirely in its Opposition, CPUC recently dismissed a complaint brought by a consumer against a COLR for providing wireless service instead of "analog copper landline service."[8] Ex. G at 2. And again, CPUC has never represented that AP-A is an inadequate substitute for basic service; rather, it has requested AT&T to explain how AP-A is satisfying the criteria for basic service. Mot. at 12–13. Of note, AT&T does not dispute that the National Broadband Map on which it relies so heavily, *see* Opp. at 22, self-evidently does not provide information on ***indoor*** wireless coverage. Mot. at 12. To the extent AT&T is arguing that such a gap does not matter—that only goes to show why state law consumer protections like the COLR rules are necessary in the first place (and why the FCC cannot have intended to holistically preempt all of them). And in any event, again, the only COLR requirements with which AT&T has expressed any difficulty are directory and operator services, which can be provided with wireless and copper wire-based service alike. Opp. at 5, 7, 11, 21. Nor does the COLR

---

[7] Further, these elements have been required components of basic service since at least 2012. Californians should not be on the hook for AT&T's failure to accordingly develop its service offerings.

[8] To be clear, even if CPUC did take the position that wireless service cannot meet the standards of basic service—and it has not—that still would not amount to "effectively requir[ing] POTS …" Opp. at 11.

tariffing requirement act as a de facto "veto" merely because wireless providers do not tariff, as AT&T suggests. *Id.* at 18. That is absurd. CPUC's 2012 decision explicitly contemplated that wireless providers can and would provide basic service; and indeed, some do so today. Mot. at 11 & Ex. G at 2.

***Third***, AT&T argues that the procedural steps it must take, *i.e.*, filing an advice letter and tariffing its substitute service, "conflict with the federal scheme." Opp. at 20. Again, however, these are steps that apply not to the retiring of the service offered over copper wire, but to any substitute service that AT&T offers.[9] *See supra* at p. 7. That is consistent with what Defendants have always represented; *i.e.*, that the advice letter process is not required to simply retire the service offered over copper wire facilities, but is mandatory as to the substitute service that AT&T chooses to offer instead. *See* Opp. at 10. And in any event, these steps certainly do not make it "***impossible or impracticable***" for AT&T to discontinue the service it offers via copper wire. Ex. E ¶ 106 (emphasis added).

### C. The Impossibility Exception Under Section 2 of the Act Does Not Apply

Although AT&T explains why it may be inconvenient, expensive, or cumbersome to separate out the intrastate and interstate components of its service offered via copper wire, it does not—as it must to advance its implied preemption claim—demonstrate why it would be *impossible*. Opp. at 23–25. As a result, and as detailed in the Motion, *see* Mot. at 23–25, while Defendants maintain that no preemption exists here, if the Court disagrees, it should in the alternative find the COLR rules preempted only as to the interstate component of the service.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion to Dismiss.

[9] Again, to the extent the Court disagrees, it should in any event find that only the COLR rules imposing these procedural requirements are preempted.

Dated: October 29, 2026

Respectfully submitted,

Rob Bonta
Attorney General of California
Todd Grabarsky
Supervising Deputy Attorney General
Sabrina T. McGraw
Viviana M. Hanley
Deputy Attorneys General



Camille Framroze
Deputy Attorney General
*Attorneys for Defendants John Reynolds, Darcie L. Houck, Karen Douglas, Matthew Baker, Christine Harada, and Rob Bonta, in their official capacities*

SA2026302688

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Pacific Bell Telephone Company dba AT&T California v. John Reynolds, et al.** | No. | **3:26-cv-03148-LL-JAC** |

I hereby certify that on October 29, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 29, 2026, at Fresno, California.

| | |
|---|---|
| Andrew Vargas | ***/s/ Andrew Vargas*** |
| Declarant | Signature |

SA2026302688
95767554